IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BENJAMIN WOLFE,

       Plaintiff,

v.                                             CIV 14-0088 JB/KBM

GENERAL ELECTRIC CO.,
GENERAL ELECTRIC AVIATION,
THE GRAND LODGE OF THE
INTERNATIONAL ASSOCIATION OF
MACHINISTS and AEROSPACE WORKERS,
LOCAL LODGE NO 794,

       Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Defendant General Electric Co.'s Motion to Dismiss Plaintiff's Complaint (*Doc. 10*) filed April 9, 2014, and fully briefed May 16, 2014 (*Doc. 30*), and on Defendant International Association of Machinists and Aerospace Workers Local Lodge 794's Motion to Dismiss (*Doc. 19*) filed April 11, 2014 and fully briefed May 16, 2014 (*Doc. 28*).  Pursuant to 28 U.S.C. § 636(b)(1)(B), this case has been referred to me "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case."  *Doc. 34*.

### I.  Factual Allegations

Plaintiff was employed by Defendant General Electric Co. through its subsidiary company General Electric Aviation (collectively "GE") for 22 years.  *Doc. 1* at 2-3.  He began working as a janitor and worked his way up to machine operator.  *Id.* at 3.  Plaintiff was also a member of The Grand Lodge of the International Association of

Machinists and Aerospace Workers, Local Lodge No. 794 (the "Union") and as such, was a third-party beneficiary to the Collective Bargaining Agreement ("CBA") between the Union and GE.  *Id.*  at 2.

In this pro se action, Plaintiff's Complaint makes the following allegations.[1]  In 2006, Plaintiff was moved into Metals and Composite where he believed that overtime and training were not being administered according to the CBA.  *Id.* at 3.  Consequently, Plaintiff began filing grievances regarding the overtime issue, eventually accumulating over 100 grievances.  *Id.* at 4.  According to Plaintiff, as a result of the numerous grievances, GE began taking disciplinary action against him, which he contends was initiated by the Union steward.  *Id.* at 4-5.  Plaintiff continued to file grievances because the overtime issues were not corrected.  *Id.* at 5.  In retaliation, the Company and the

---

[1]  Plaintiff acknowledges that the Complaint was prepared by an attorney who has never entered an appearance in this action.  *Doc.23* at 2 ("re-hired an employment attorney to help with the initial filing of this lawsuit and can no longer afford to pay for legal services").  As the Tenth Circuit has noted, this raises significant concerns:

> The duty of candor toward the court mandated by Model Rule 3.3 is particularly significant to ghostwritten pleadings.  If neither a ghostwriting attorney nor her pro se litigant client disclose the fact that any pleadings ostensibly filed by a self-represented litigant were actually drafted by the attorney, this could itself violate the duty of candor.  The practice of undisclosed ghostwriting might be particularly problematic in light of the special leniency afforded pro se pleadings in the courts.  This leniency is designed to compensate for pro se litigants' lack of legal assistance.  Thus, if courts mistakenly believe that the ghostwritten pleading was drafted without legal assistance, they might apply an unwarranted degree of leniency to a pleading that was actually drafted with the assistance of counsel.  This situation might create confusion for the court and unfairness toward opposing parties.  It is therefore likely that the failure to disclose ghostwriting assistance to courts and opposing parties amounts to a failure to "disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client," which is prohibited by Model Rule 3.3.  Undisclosed ghostwriting would also likely qualify as professional misconduct under Model Rules 8.4(c) and (d), prohibiting conduct involving a misrepresentation, and conduct that is prejudicial to the administration of justice, respectively.

*Duran v. Carris,* 238 F.3d 1268,1272 (10th Cir. 2001 (quoting John C. Rothermich, Ethical and Procedural Implications of "Ghostwriting" for Pro Se Litigants: Toward Increased Access to Civil Justice, 67 Fordham L.Rev. 2687, 2697 (1999) (citing Model Rules of Prof'l Conduct R 3.3(a)(2)) (footnotes omitted).

Union continued to bring disciplinary action and were "building a file" against him until they eventually terminated his employment on September 11, 2007. *Id.*

Prior to his termination, Plaintiff brought several labor charges with the National Labor Relations Board ("NLRB") against the Company and the Union. *Id.* at 6. Following his termination, Plaintiff filed an additional charge with the NLRB challenging the termination as retaliatory. *Id.* The NLRB charges were deferred to an arbitration proceeding in 2009. *Id.* Plaintiff complains that the Union and its counsel failed to adequately represent him at arbitration. *Id.*

After the 2009 arbitration, Plaintiff still had over 70 grievances pending, and he filed an additional NLRB charge which resolved some of those grievances. *Id.* at 9. However, over fifty (50) grievances remained pending and, in 2012, the NLRB ruled against Plaintiff on those remaining grievances. *Id.* Of special import, in July of 2012, Plaintiff was informed regarding his remaining grievances:

> UNION POSITION: The Union concurs with the investigation outcome of the National NLRB. "The Union has secured several settlement offers from the Employer; however, you have [Ben Wolfe] refused to accept the settlement offers." Therefore, the grievances will go unsettled and the Union will not process them any further.

> COMPANY POSITION: The Company agrees with the decision of the National Labor Relations Board relative to the issues raised in that hearing on Ben Wolf's claims. In addition, the Company has made repeated good faith efforts from September 2010 to present to resolve any and all outstanding issues relative to Mr. Wolfe to no avail. The company agrees with the union's position that this issue will no longer be processed without prejudice or precedence.

*Doc. 1* at 9-10 (quotation marks and brackets in original). Following this decision, Plaintiff again filed a charge with the NLRB against the Union and on July 30, 2013, the

NLRB issued its decision which, he contends, did not address the allegations in his charge. *Doc. 1* at 10.

On January 30, 2014, Plaintiff filed a complaint in this Court alleging claims for breach of the duty of fair representation, breach of the collective bargaining agreement, breach of the employment contract, breach of the duty of good faith and fair dealing, and for prima facie tort. Defendants move to dismiss Plaintiff's Complaint in its entirety.

## II.  Motion to Dismiss Pursuant to Rule 12(b)(6)

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the United States Supreme Court has held that:

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679. Additionally, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* at 678. "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v.*

4

*United Air Lines,* 671 F.3d 1188, 1192 (10th Cir. 2012).  Finally, "[a] court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir.1991).

Generally "a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (Internal quotation marks and citation omitted).  However, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir.2002)).   Both GE and the Union submit exhibits and the parties do not dispute the authenticity of those documents, (*Doc. 9* at 4); however, the Court did not consider the exhibits because they were not necessary for the determination of the dispositive issue in this case.

**III.**   **Discussion**

A. Preemption

In Plaintiff's first and second claims, Plaintiff seeks relief pursuant to § 301[2] of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"), in what is commonly known as a "hybrid § 301/DFR (duty of fair representation) suit."  *See Webb v. AFB*

---

[2] Section 301 of the LMRA states in pertinent part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C.A. § 185(a).

*Freight System, Inc.*, 155 F.3d 1230, 1237 (10th Cir. 1998); *Doc. 1* at 1, 12.  A "hybrid"

action consists of a claim by an employee against an employer based on an alleged

violation of the CBA and a claim against the union for an alleged breach of the duty of

fair representation.  *See Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 530 (10th Cir.

1992);  *Hartwick v. Dist. Lodge 70, Int'l Ass'n of Machinists & Aerospace Workers*, 184

F. Supp. 2d 1092, 1098 (D. Kan. 2001) (quoting *DelCostello v. International Broth. of

Teamsters*, 462 U.S. 151, 153-64, 103 S. Ct. 2281(1983)).  Plaintiff's other claims are

grounded in state contract and tort law principles.

      Defendants contend that Plaintiff's claims are preempted by federal law.

Section 301 "preempts questions relating to what the parties to a labor agreement

agreed, and what legal consequences were intended to flow from breaches of that

agreement," regardless of whether the issue arises in the context of a suit  for breach of

contract or tort liability.  *Cisneros v. ABC Rail Corp.*, 217 F.3d 1299, 1302 (10th Cir.

2000).  "[W]hen resolution of a state-law claim is substantially dependent upon an

analysis of the terms of an agreement made between the parties in a labor contract," a

state law claim is completely preempted by § 301 and "that claim must either be treated

as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *Allis-

Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S. Ct. 1904 (1985) (citation omitted).

"Preemption arises only when an 'evaluation of the claim is inextricably intertwined with

consideration of the terms of the labor contract.'" *Mowry v. UPS*, 415 F.3d 1149, 1152

(10th Cir. 2005) (quoting *Allis-Chalmers Corp,* 471 U.S. at 213).

      In this case, in order to evaluate Plaintiff's state law claims, the Court would be

required to engage in an analysis of the terms of the CBA.  For example, the CBA is the

only "employment contract" referenced in the Complaint; thus, evaluation of Plaintiff's

breach of the employment contract claim requires consideration of the terms of the

CBA.  Evaluation of Plaintiff's good faith and fair dealing and prima facie tort claims

similarly involve consideration of the terms of that agreement.[3]  Accordingly, Plaintiff's

state law claims are inextricably intertwined with the CBA, and are, therefore,

preempted by § 301 and subject to the statute of limitations applicable under federal law.

    B. <u>Statute of Limitations</u>

    "Hybrid suits under § 301 of the LMRA are subject to the six-month statute of

limitations prescribed by 29 U.S.C. § 160(b)."[4]  *Aguinaga v. United Food and*

*Commercial Workers Intern. Union*, 993 F.2d 1463, 1472 (10th Cir. 1993) (citing

*Delcostello*, 462 U.S. at 154-55).  It is well settled that where, as here, the union rejects

or abandons an employee's claims during the grievance process, "the six-month

limitation period begins to run when the employee knows or, through the exercise of

reasonable diligence, should have known of that union's decision or action."  *Lucas v.*

*Mountain States Tel. & Tel.*, 909 F.2d 419, 421 (10th Cir. 1990).  Plaintiff acknowledges

---

[3] A good faith and fair dealing claim "protects the reasonable expectations of the parties arising from an agreement," and "requires parties to act in good faith with respect to both ambiguous and unambiguous terms," but cannot be used to override express terms of the contract.  *Sanders v. FedEx Ground Package Sys., Inc.*, 144 N.M. 449, 456, 188 P.3d 1200, 1207 (NMSC 2008).  In the contract context, a prima facie tort claim is based on "one who, without justification or privilege to do so, induces a third person not to perform a contract with another, is liable to the other for the harm caused thereby."  *Schmitz v. Smentowski,* 1990-NMSC-002, 109 N.M. 386, 396, 785 P.2d 726, 736 (quoting *Wolf v. Perry*, 65 N.M. 457, 461, 339 P.2d 679, 681 (1959)).

[4] 29 U.S.C.A. § 160 (b) (formerly § 10(b)) states in pertinent part:

> [N]o complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made, unless the person aggrieved thereby was prevented from filing such charge by reason of service in the armed forces, in which event the six-month period shall be computed from the day of his discharge.

that in July of 2012, the Union informed him that his remaining grievances "will go unsettled and the Union will not process them any further." *Complaint* at ¶46. Accordingly, Plaintiff had six months from July 2012 in which to file a complaint with this court. Plaintiff did not file the complaint until January 30, 2014, well over the six-month limitation period.

Following the Union's decision to no longer pursue his grievances, Plaintiff filed a timely charge with the NLRB alleging that the Union failed to fairly represent him in processing his final grievances. *Doc. 1* at 10. The NLRB issued its decision on July 30, 2013, and Plaintiff filed his complaint in this Court on January 30, 2014, exactly six months following the NLRB decision. The Court has uncovered no Tenth Circuit opinions that address whether filing a charge with the NLRB tolls the limitations period under § 301. The weight of authority from other circuits, however, holds that filing a charge with the NLRB pursuant to § 10 of the National Labor Relations Act, 29 U.S.C. § 160, does **_not_** toll the limitations period under § 301. *See Arriaga-Zayas v. Int'l Ladies' Garment Workers' Union-Puerto Rico Council*, 835 F.2d 11, 14 (1st Cir. 1987); *Kalyanaram v. Am. Ass'n of Univ. Professors at New York Inst. of Tech., Inc.*, 742 F.3d 42, 49 (2d Cir. 2014), *cert. denied sub nom. Kalyanaram v. Am. Ass'n of Univ. Professors at the New York Inst. of Tech., Inc.*, No. 14-178, 2014 WL 4054024 (2014); *Kolomick v. United Steelworkers of Am., Dist. 8, AFL-CIO*, 762 F.2d 354, 356-57 (4th Cir. 1985); *Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union (AFL-CIO, CLC) Local 421 v. A-CMI Michigan Casting Ctr.*, 191 F.3d 764, 769 (6th Cir. 1999) (citing *Adkins v. Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO-CLC*, 769 F.2d 330, 335 (6th Cir. 1985)); *Aarsvold v. Greyhound Lines, Inc.*, 724 F.2d 72, 73 (8th Cir.

1983);  *Conley v. Int'l Bhd. of Elec. Workers, Local 639*, 810 F.2d 913, 915-16 (9th Cir.

1987).

As the Fourth Circuit Court of Appeals explains in *Kolomick*, claims of unfair labor

practices before the NLRB "may be pursued independently from those brought pursuant

to § 301" and are not a prerequisite to pursuing a claim in federal court.  *Kolomick*, 762

F.2d at 356-57.  Further, the "purposes of the two avenues of relief also differ."  *Id.*

While the National Labor Relations Act seeks to "effectuate the public interest by

thwarting unfair industry practices," § 301 provides an avenue to compensate an

employee who has been wronged by the company and union.  *Id.* at 357.   Finally, the

conclusion that filing a charge with the NLRB does not toll the limitations period is "in

harmony with the statutory policy favoring the prompt resolution of labor disputes."  *Id.*

(citing *DelCostello*, 462 U.S. at 168).  Adopting this reasoning, I find that the six-month

statute of limitations was not tolled when Plaintiff filed his charge with the NLRB.

Plaintiff does not address the limitations issue in his response to Defendants'

motions to dismiss.  Rather, he argues the merits of his claims except to say that

"Plaintiffs [sic] duty of fair representation charge is timely and ongoing."  *Doc. 23* at 4.

Because it is clear by his own admission, however, that Plaintiff in fact knew by July of

2012 that the Union was not going to pursue his remaining grievances,[5]  this Complaint

---

[5]  In his response, Plaintiff alleges that there are grievances from 1998 and 1999 that the Union has not
addressed. *Doc. 23* at 4, 5.  Plaintiff does not mention these grievances anywhere in his Complaint and
these additional allegations cannot be used to defeat Defendants' motions to dismiss. *Tillman v. Murphy*,
No. 11-CV-00196-WYD-CBS, 2012 WL 4755356, at *7 (D. Colo. Sept. 5, 2012) *report and
recommendation adopted,* No. 11-CV-00196-WYD-CBS, 2012 WL 4755232 (D. Colo. Oct. 4, 2012) *aff'd,*
523 F. App'x 524 (10th Cir. 2013);  *Broam v. Bogan*, 320 F.3d 1023, 1026 FN2 (9th Cir. 2003) (quoting
*Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir.1998) ("In determining the propriety of
a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such
as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original); *Harrell v.
United States*, 13 F.3d 232, 236 (7th Cir. 1993) ("If a complaint fails to state a claim even under the liberal

cannot withstand the statute of limitations bar.

Wherefore,

**IT IS HEREBY RECOMMENDED** that Defendants' motions to dismiss *(Docs. 10 & 19)* be granted and this case be dismissed with prejudice.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).   A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.   If no objections are filed, no appellate review will be allowed.**

---

_____

UNITED STATES CHIEF MAGISTRATE JUDGE

---

requirements of the federal rules, the plaintiff cannot cure the deficiency by inserting the missing allegations in a document that is not either a complaint or an amendment to a complaint.").

.

.